IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

CARLOS D. LINDSEY,

                                  Plaintiff,

        v.                                                          OPINION and ORDER

ELIZABETH SCHNEIDER                                              19-cv-1057-jdp
and REED TREFZ,

                          Defendants.[1]

        Plaintiff Carlos Lindsey is a prisoner incarcerated at Wisconsin Secure Program Facility

(WSPF) who has repeatedly filed false documents in this court. In this order, I impose sanctions

on Lindsey for his misconduct in this case. I will revoke his in forma pauperis status in this

case and I will dismiss with prejudice his two pending cases once I receive the mandate from

the court of appeals. I will also bar him from filing any civil cases in federal court for at least

two years, after which he may ask me to lift the bar or modify it if he has paid all filing fees

owed to this court.

        I previously imposed a less stringent filing bar on Lindsey in 2018 as a sanction for his

dishonesty. *See Lindsey v. Johnston*, No. 18-cv-398, 2018 WL 6606241 (W.D. Wis. Dec. 17,

2018). Under that filing bar, Lindsey could file only habeas corpus petitions and complaints

in which he alleged that he was in imminent danger of serious physical harm. Lindsey has also

incurred three strikes under 28 U.S.C. § 1915(g), which prohibits him from proceeding in

forma pauperis unless he alleges in his complaint that he is in imminent danger of serious

physical injury. I screened Lindsey's complaint in this case, Dkt. 1, and I concluded that he

---

[1] I have updated the caption to reflect defendants' names as indicated in their answer, Dkt. 22.

had satisfied the terms of his filing bar and § 1915(g) by alleging that he was in imminent danger of harming himself with items that he was allowed to have in his cell, Dkt. 4.

Defendants move to revoke Lindsey's in forma pauperis status. Dkt. 23. They contend that Lindsey's allegations of imminent physical harm are lies and that I should revoke his in forma pauperis status as provided in *Sanders v. Melvin*, 873 F.3d 957 (7th Cir. 2017), and *Taylor v. Watkins*, 623 F.3d 483 (7th Cir. 2010). Following the guidance in *Sanders* and *Taylor*, I held a two-and-one-half-hour hearing by videoconference to determine if Lindsey's allegations of imminent danger were true.

## FINDINGS OF FACT

I have considered the documentary and video evidence submitted at and after the hearing, Dkts. 29-2–8 and Dkt. 35-1; and the testimony of Lindsey, defendants correctional officer Elizabeth Schneider and correctional sergeant Reed Trefz, and correctional sergeant Stephen Schneider. (I'll refer to the Schneiders as E. Schneider and S. Schneider to distinguish them.) From that evidence, I find the following facts.

Lindsey has been housed in segregation on the Alpha Unit at WSPF for several years. Lindsey has a long history of self-harm. He is in the PACE program, designed to facilitate the transition of inmates in segregation to general population. Lindsey receives regular monitoring and counselling by the staff of the Psychological Services Unit. Dkt. 29-8. Lindsey's Alpha Unit cell has an intercom that connects to the unit control bubble. The intercom is supposed to be used only to report medical emergencies, although inmates commonly use the intercom for various non-emergency purposes.

The incidents underlying Lindsey's allegations of imminent harm in this case occurred on December 22, 2019. Because of his history of self-harm attempts, Lindsey was then on a medication restriction that meant that he could not keep medication in his cell. *Id.* at 9. But he was not on a strict property restriction that would have prohibited him from having a plastic spoon or stapled papers in his cell.

Lindsey believed that he had been approved by the Health Services Unit (HSU) to receive ice for a knee injury that he had reported several days earlier. (Whether Lindsey actually had that HSU approval is not material to the issues before me, but E. Schneider testified, credibly, that Lindsey did not.) Throughout the morning, Lindsey repeatedly used his cell intercom to demand ice. Trefz was working overtime as the first shift sergeant on the Alpha Unit, so he was in the bubble to answer Lindsey's intercom calls until about noon. (Trefz ordinarily worked second shift in central control; he was rarely on Alpha Unit.) Lindsey did not report to Trefz that he felt suicidal or intended any self-harm.

Around noon, E. Schneider took over in the Alpha Unit bubble. Trefz went to Lindsey's cell. The interaction was recorded by Trefz's body camera. Dkt. 29-6. He asked Lindsey what the issue was. Lindsey made an angry, obscenity-filled demand for a supervisor and for ice. Lindsey did not report suicidal thoughts or any intent to engage in self-harm. (Lindsey testified at the hearing that as Trefz walked away, after the recording stopped, he told Trefz that he was going to harm himself. I find Lindsey's testimony to be not credible.)

E. Schneider also answered intercom calls from Lindsey demanding ice. She noted Lindsey's disruptive use of the intercom in the unit log at 1:13 p.m. Dkt. 29-3, at 2. At 2:44 p.m, E. Schneider noted Lindsey's disruptive conduct in his behavior log. Dkt. 29-2, at 1. Lindsey did not report to E. Schneider that he felt suicidal or intended any self-harm.

Shortly after 2:00 p.m., S. Schneider went to Lindsey's cell to deliver ice. (He was also filling in on an overtime shift on Alpha Unit.) His interaction with Lindsey was recorded by his body camera. Dkt. 29-4. He calmly explained how HSU approval for ice might not have been entered into the computer system and asked about Lindsey's request to be seen by HSU. He gave Lindsey a plastic bag of ice. Lindsey told S. Schneider about a cut on his arm, which S. Schneider had asked to see. S. Schneider said that it looked like an old wound that Lindsey had reopened, saying "That's a beforehand thing and you opened it up." Lindsey answered affirmatively. In the video, Lindsey did not appear to be in any distress about the wound. He did not report to S. Schneider that he felt suicidal or intended any self-harm. E. Schneider recorded S. Schneider's visit in the unit log at 2:16 p.m.

At 2:47 p.m., nurse Kemmerling from HSU came to Lindsey's cell for a wellness check. Dkt. 29-8, at 5. (At the hearing, Lindsey denied that the wellness check took place and says that HSU staff commonly lie in their records. I find Lindsey's testimony not credible.)

Lindsey was seen in HSU the following day, December 23. He requested renewal of HSU approval of his ice, and the nurse cleaned and bandaged the wound on his arm. Dkt. 29-7, at 4.

At the hearing, Lindsey testified that he reported to both Trefz and E. Schneider via intercom that he was feeling suicidal and that he was at risk of harming himself with a plastic spoon and staples that were in his cell. I find Lindsey's testimony on these points to be not credible. His testimony directly contradicts the testimony of Trefz and E. Schneider. Lindsey's testimony is also inconsistent with his statements on the body camera video recordings of his interactions with Trefz and S. Schneider.

Lindsey testified that he begins to think of self-harm when he is angry or frustrated and that he gets angry or frustrated when he does not get things that he believes that he is entitled to. He also testified that he always tells staff that he intends to harm himself before doing so because this may allow him to bring a lawsuit against them under the Eighth Amendment to the United States Constitution. I find that at least some of Lindsey's acts of self-harm and threats of self-harm are gestures intended to manipulate WSPF staff.

In his complaint, Lindsey alleged the following:

> [O]n December 22, 2019 Lindsey had broke and cut his arm with a plastic spoon, after c/o Elizabeth Schnieder and Sgt. Trefz ignored Lindsey's reports that he was suicidal and having self harm thoughts.

Dkt. 1, at 2. I find that on December 22 Lindsey did not report to either Trefz or E. Schneider that he was suicidal or having thoughts of self-harm. Lindsey's allegation in his complaint that Trefz and E. Schneider ignored Lindsey's reports was knowingly false. I find that Lindsey's allegation that he faced an imminent risk of serious physical harm was also knowingly false because Lindsey was not suicidal on December 22 and he did not intend to commit any serious self-harm. Finally, I find that Lindsey made these false allegations for the purpose of evading his filing bars.

## SANCTIONS

Lindsey is an intelligent and sophisticated pro se litigant who has filed 19 cases in this court and 13 in the Eastern District of Wisconsin. Unfortunately, he has no compunction about lying to the court. In this case, the allegations in Lindsey's complaint made to establish a risk of imminent physical harm were knowingly false. So I will grant defendants' motion to revoke Lindsey's in forma pauperis status, Dkt. 32. At a minimum, this means that Lindsey

may not proceed in this case without immediate payment of the full filing fee. Because I also find that Lindsey lied to manipulate the court to bypass his filing bars, I will dismiss this case with prejudice. *See Sanders*, 873 F.3d at 961 (authorizing dismissal as a sanction).

But that is not the end of the matter, because this is just the latest episode in Lindsey's history of dishonesty. Previous incidents are described in *Lindsey v. Johnston*, No. 18-cv-398, 2018 WL 6606241 (W.D. Wis. Dec. 17, 2018). The sanction that I imposed in the *Johnston* case included dismissing all four of Lindsey's then-pending cases. But even that sanction did not deter him.

I conclude that the only effective sanction is a filing bar that does not include an imminent-danger exception for civil suits. *See Lindsey v. Hoem*, No. 19-3278, 2020 WL 1514856 (7th Cir. Mar. 30, 2020) (citing *Support Sys. Int'l, Inc. v. Mack*, 45 F.3d 185, 186 (7th Cir. 1995), as authorizing such a filing bar). Accordingly, the only cases that Lindsey may file in this court are habeas corpus petitions relating to his criminal convictions.

Lindsey also has two other cases, *Lindsey v. Boughton*, No. 19-cv-885, and *Lindsey v. Hoem*, 19-cv-904, that the court of appeals has decided adequately allege imminent physical harm. Once the court of appeals issues a mandate remanding those cases to this court, I will dismiss them with prejudice as a further sanction for Lindsey's misconduct in this case.

The Constitution of the United States, as enforced through the courts, protects the rights of prisoners, who might otherwise be vulnerable to abuse. So I do not impose this sanction lightly. But other that Lindsey's own uncorroborated allegations, I have seen no evidence in any of Lindsey's cases that leads me to believe that WSPF officials ignore his threats of self-harm or abuse his rights in any way. Lindsey is a difficult prisoner who uses threats of self-harm to manipulate prison staff. But even manipulative gestures might lead to serious

injury. I have seen no evidence that WSPF staff ignore Lindsey's potential for self-harm, even if they rightly view his actions as manipulative gestures.

Lindsey's specious claims drain the resources of the court, the Wisconsin Department of Justice, and the Department of Corrections. I conclude that it is appropriate to bar Lindsey from filing any civil cases for two years, with the sole exception of habeas petitions relating to his criminal convictions. After two years, if Lindsey has paid filing fees owed to this court, he may file a motion asking me to lift or modify this filing bar. I will send a copy of this order to the judges of the Eastern District of Wisconsin encouraging them to dismiss any of Lindsey's civil cases pursuant to this order or to transfer them to me.

ORDER

IT IS ORDERED that:

1. Plaintiff Carlos D. Lindsey's request to proceed in forma pauperis is DENIED. The permission granted in Dkt. 4 is revoked; Lindsey owes the filing fee for this case, immediately payable.

2. All other pending motions, Dkt. 26, Dkt. 27, Dkt. 32, and Dkt. 36, are DENIED as moot.

3. This case is dismissed with prejudice. The clerk of court is directed to enter judgment in favor of defendants and close this case.

4. Lindsey is barred from filing civil cases for at least two years from the date of this order with the sole exception of habeas petitions relating to his criminal convictions.

5. Lindsey may petition the court to lift or modify the filing bar after two years if he has paid all filing fees owed to this court. The filing bar will remain in place until the court grants a motion to lift or modify it.

Entered April 14, 2020.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge